GARCIA RAINEY BLANK & BOWERBANK LLP
A Limited Liability Partnership
NORMA V. GARCIA, Cal. Bar No. 223512
ngarciaguillen@garciarainey.com
JEFFREY M. BLANK, Cal. Bar No. 217522
jblank@garciarainey.com
695 Town Center Drive, Suite 540
Costa Mesa, CA 92626
Telephone:    (714) 382-7000
Facsimile:    (714) 784-0031

Attorneys for Plaintiff
LI MEI CHEN

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re TAYLOR RONALD WOODS,<br><br>Debtor. | **Case No.**: 2:22-bk-13613-ER<br>**Adversary No**: 2:22-ap-_____-ER<br><br>Chapter 7 |
| LI MEI CHEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR RONALD WOODS, an individual,<br><br>Defendant. | Judge:  Hon. Ernesto M. Robles<br><br>**ADVERSARY COMPLAINT FOR**<br>**(1)    DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A);**<br>**(2)    DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(B);**<br>**(3)    DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(4);**<br>**(4)    DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6);**<br>**(5)    DETERMINATION OF NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(19)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Li Mei Chen complains and alleges as follows:

## **PARTIES**

1.      Plaintiff Li Mei Chen ("Plaintiff" or "Mrs. Chen") was and is, at all times mentioned herein, an individual residing in Albuquerque, New Mexico.

2.      Plaintiff is informed and believes and, on that basis, alleges that defendant Taylor Ronald Woods ("Defendant" or "Woods"), at all relevant times, was a resident of Orange County, California until recently relocating to Meridian, Idaho.  At all relevant times, Woods owns and, along with Howard Wu ("Wu"), was and is a managing member of Urban Commons, LLC ("Urban Commons"), a privately held real estate investment trust (REIT) management company which is registered to do business in the State of California.  Urban Commons is the sole manager of Urban Commons 6th Ave Seattle, LLC ("UC Seattle"), a Delaware Limited Liability Company.

## **JURISDICTION AND VENUE**

3.      This is an adversary proceeding to determine the dischargeability of debts commenced under 11 U.S.C. § 523 and Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core proceeding" pursuant to 28 U.S.C. § 157.

5.      Venue of this action properly lies in this Court pursuant to 28 U.S.C. § 1409, inasmuch as Defendant's bankruptcy case, out of which this matter arises and to which this matter is related, is pending in this District.  Moreover, Woods's conduct that is the subject of this Complaint occurred in the State of California.

6.      On June 30, 2022, an involuntary petition was filed against Woods under Chapter 7 of Title 11 of the United States Code.  The bankruptcy action is entitled In re Taylor Ronald Woods, Case No. 2:22-bk-13613-ER (hereinafter referred to as the "Bankruptcy Case").

7.    This adversary proceeding relates to the Bankruptcy Case now pending in this Court.  Plaintiff holds general unsecured claims against Defendant pursuant to claims arising from a fraudulent offer to purchase securities, in violation of federal and California securities laws, as more fully set forth in the Complaint pending in the United States District Court, Central District of California under the caption and docket number of *Chen v. Urban Commons 6th Ave Seattle, LLC et al.*, Case No. 2:21-cv-08866-JLS-DFM, filed on November 10, 2021 (hereinafter referred to as the "Civil Action").  A true and correct copy of the Complaint in the Civil Action is filed herewith as **Exhibit 1** and incorporated herein by this reference.

## **GENERAL ALLEGATIONS**

8.    In or about January 2020, Defendant, by and through Urban Commons, issued a private offering to investors ("UC Seattle Offering"), seeking to raise Thirty Million Dollars ($30,000,000) in membership interest in UC Seattle.  UC Seattle is the single purpose limited liability company through which Urban Commons, which is owned and co-managed by Defendant, was going to purchase the real property known as Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington ("Hilton Seattle").

9.    On or about July 3, 2020, Plaintiff received the UC Seattle Offering documents, which consisted of the Urban Commons 6th Ave Seattle, LLC Membership Interest Subscription Agreement ("Subscription Agreement").

10.    A true and correct copy of the Subscription Agreement executed by Plaintiff on July 3, 2020 is filed herewith as **Exhibit 2** and incorporated herein by this reference.

11.    Through the Subscription Agreement, Urban Commons, which is owned and co-managed by Defendant, made various representations, including, but not limited to the following:

      a.     UC Seattle anticipated completing the UC Seattle Offering by July 10, 2020;

      b.     UC Seattle would not use or apply the purchase price until it had raised the necessary funds from the UC Seattle Offering;

      c.     The funds raised from the UC Seattle Offering would be used to acquire the Hilton Seattle;

      d.     The purchase price for the Hilton Seattle would be deposited into an interest-bearing secure bank account; and (ii) all interest earned on such account would be used by UC Seattle to pay all costs and expenses (including but not limited to, all legal, accounting, and management costs and expenses) incurred in connection with the UC Seattle Offering and the formation of UC Seattle;

      e.     If the subscription is terminated, the funds raised by UC Seattle would be returned to the investors plus interest after costs and expenses were paid;

      f.     UC Seattle was obtaining acquisition loans in an approximate aggregate amount of Seventy Million Dollars ($70,000,000.00) in order to acquire and refurbish the Hilton Seattle;

      g.     Urban Commons would be the sole manager of UC Seattle with exclusive authority and control over all UC Seattle decisions in entering into and managing real estate investments;

      h.     Each investor's capital will be returned at the time of a capital event(s) and prior to any profits from such capital event(s) being distributed to the members.

(Subscription Agreement, Exh. 2, p. 1.)

12.    Based on the foregoing representations made in the Subscription Agreement, among others, Plaintiff executed the Subscription agreement on July 3,

2020, and purchased a one percent (1%) membership interest by investing Three Hundred Thousand Dollars ($300,000.00) in UC Seattle.

13.    Plaintiff is informed and believes and, on that basis, alleges that to date, Defendant has not completed the offering for UC Seattle nor has Defendant raised the Thirty Million Dollars ($30,000,000) from the UC Seattle Offering.

14.    Plaintiff is informed and believes and, on that basis, alleges that to date, Urban Commons, which is owned and co-managed by Defendant, has not acquired or refurbished the Hilton Seattle.  Indeed, on or about October 12, 2020, Plaintiff received an email correspondence addressed to all UC Seattle investors stating that Urban Commons' management was purportedly in the "final stages" of acquiring the Hilton Seattle and that they would be able to start paying investors their owed interest payments beginning on November 1, 2020.  However, Plaintiff is informed and believes and, on that basis, alleges that no such acquisition occurred.

15.    Plaintiff is informed and believes and, on that basis, alleges that instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Seattle and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in direct violation of the Subscription Agreement and their representations to Plaintiff.  Had Plaintiff known her investment would be deposited in a non-interest bearing, non-refundable escrow account, she would not have invested in UC Seattle.

16.    In addition to executing the Subscription Agreement, Plaintiff also entered into an Investment Agreement with Urban Commons, which Defendant owns and co-manages, that is the sole manager of UC Seattle.

17.    A true and correct copy of the Investment Agreement executed by Plaintiff on July 5, 2020 is filed herewith as **Exhibit 3** and incorporated herein by this reference.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

18.     Through the Investment Agreement, Urban Commons, which Defendant owns and co-manages, made various representations, including, but not limited to, the following:

a.     "Member shall receive a six percent (6%) guaranteed preferred return per annum on Investment Capital ("Preferred Return"), to be paid each Calendar Quarter at the rate of 1.5% each Calendar Quarter.

b.     "'Preferred Return' means an amount calculated like interest and accrued on the balance standing from time to time in such Member's Investment Capital account at a simple interest rate equal to six percent (6%) per annum, non-compounded.

c.     "'Calendar Quarter' shall mean each period of three (3) consecutive calendar months commencing on the first day of January, April, July and October of each Calendar Year.

d.     "Net profits of Company [UC Seattle] that exceed 6% per annum will be distributed to the members of the Company [UC Seattle] on a pro rata basis according to the percentage of ownership interest as set forth in Exhibit A of the Operating Agreement."

(Investment Agreement, Exh. 3, p. 1, §1(a)-(d).)

19.     Notably, to date, Plaintiff has only received two (2) Preferred Return payments on her investment—specifically, (i) $2,250.00 received on November 3, 2020 and (ii) $2,250.00 received on November 4, 2020—totaling $4,500.00, which represents only 1.5% of Plaintiff's investment.  However, pursuant to the terms of the Investment Agreement, as of the Calendar Quarter beginning in October 2022, Plaintiff should have received at least $36,000.

20.     Accordingly, Plaintiff is still owed at least $295,500.00, which represents the remaining balance of her initial investment, plus her Preferred Returns, interest, and attorney's fees.

21.     Plaintiff further alleges that the securities that Defendant, through Urban Commons, sold to Plaintiff were unregistered in violation of the Securities Act of 1933 and were not exempt from such registration or qualification under the Securities Act of 1933.  Therefore, the offer and sale of membership interests in UC Seattle by Defendant, through Urban Commons, which Defendant owns and co-manages, violated the Securities Act of 1933 and California securities law.

22.     During the marketing and solicitation of investments in the membership interest of UC Seattle, Defendant did not disclose his relationship with, involvement in, and/or ownership interest in EAGLEHT, which is the Singaporean REIT which was supposed to buy UC Seattle upon UC Seattle's acquisition of the Hilton Seattle. Plaintiff is informed and believes and, on that basis, alleges that Defendant and Wu own and or owned seventeen percent (17%) of the equity in EAGLEHT and were and/or are Chairman and Deputy Chairman, respectively, of the EAGLEHT board.

23.     Plaintiff is informed and believes and, on that basis, alleges that at the time Defendant, through Urban Commons, issued the offering of membership interest in UC Seattle to Plaintiff, Defendant knew that EAGLEHT was not performing well and failed to disclose this material fact to Plaintiff.  Specifically, Defendant knew that that EAGLEHT had defaulted on a Three Hundred and Forty-One Million Dollar (US $341,000,000.00) facility loan.   Importantly, this default occurred in or about December 2019.

24.     Plaintiff is informed and believes and, on that basis, alleges that EAGLEHT SP is the name under which shares of EAGLEHT were sold on the Singapore Stock Exchange.  Plaintiff is informed and believes and, on that basis, alleges that at the time Defendant, through Urban Commons, issued the offering of membership interest in UC Seattle to Plaintiff, Defendant knew that trading of EAGLEHT SP was suspended.  Plaintiff is also informed and believes and, on that basis, alleges that Defendant holds and/or held shares of EAGLEHT SP as a result of his relationship, involvement, and/or ownership interest in EAGLEHT.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

25.     Plaintiff is further informed and believes and, on that basis, alleges that at the time Defendant, through Urban Commons, issued the offering of membership interests in UC Seattle, Defendant knew he and his associates were under investigation by the Monetary Authority of Singapore (MAS) and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP.

26.     Nowhere in the documents provided to Plaintiff as part of the UC Seattle Offering, including the Subscription Agreement and the Investment Agreement, or otherwise did Defendant, either directly or through Urban Commons, disclose his involvement with, connection to, and/or relationship with EAGLEHT.

27.     Nowhere in the documents provided to Plaintiff as part of the UC Seattle Offering, including the Subscription Agreement and the Investment Agreement, or otherwise did Defendant, either directly or through Urban Commons, disclose (i) EAGLEHT's financial trouble, or (ii) that EAGLEHT defaulted on its Three Hundred and Forty-One Million Dollar (US $341,000,000.00) facility loan in or about December 2019.

28.     Nowhere in the documents provided to Plaintiff as part of the UC Seattle Offering, including the Subscription Agreement and the Investment Agreement, or otherwise did Defendant, either directly or through Urban Commons, disclose anything about (i) EAGLEHT SP's troubles with the Monetary Authority of Singapore (MAS) and the Singapore Stock Exchange, or (ii) the suspension of EAGLEHT SP's shares on the Singapore Stock Exchange.

29.     Indeed, none of the disclosures identified above were made to Plaintiff prior to soliciting and accepting her investment in UC Seattle, even though Defendant had an obligation to do so.

30.     Defendant, both directly and through Urban Commons, made misrepresentations of material facts and omitted material facts concerning the UC

Seattle Offering.  Plaintiff relied on such misrepresentations and/or omissions in deciding to invest in UC Seattle.  But for such misrepresentations and/or material omissions, Plaintiff would not have invested $300,000 in UC Seattle.

31.    In sum, in the pitch to solicit the purchase of membership interest in UC Seattle by Plaintiff, Defendant, both directly and through Urban Commons, and by means of written and/or oral communications, made untrue statements of material facts and omitted to state material facts necessary to make the statements made, considering the circumstances under which the statements were made, not misleading, including, inter alia:

a. Materially misrepresented and omitted material facts concerning Defendant's credentials, experience, and capabilities in order to induce the trust and confidence of Plaintiff and other investors and lenders;

b. Failed to disclose EAGLEHT's default and acceleration thereafter of its Three Hundred and Forty-One Million Dollar (US$341,000,000.00) loan;

c. Materially misrepresented and omitted material facts concerning the completion dates for the offerings and the dates on which the Hilton Seattle would be sold to EAGLEHT;

d. Materially misrepresented and omitted material facts concerning raising the necessary funds from the UC Seattle Offering to purchase the Hilton Seattle;

e. Materially misrepresented and omitted material facts concerning the status of the investment, acquisition of the Hilton Seattle, and escrow account allegedly holding Plaintiff's investment; and

f. Materially misrepresented and omitted material facts concerning the Preferred Returns that Plaintiff would receive under the Investment Agreement.

32.    On February 17, 2021, Plaintiff provided Wu, who co-manages Urban Commons with Defendant, with written correspondence wherein Plaintiff provided Urban Commons with notice of Plaintiff's Termination of Membership Interest as to the Subscription Agreement and Investment Agreement.

33.    Thereafter, on or about March 8, 2021, Plaintiff participated in a Zoom call with UC Seattle investors led by Wu, who, along with Defendant, is a co-manager of Urban Commons, which is the Manager of UC Seattle.  During the Zoom call, Wu refused to state if and/or when the investors would be paid their quarterly interests.  Wu further stated that UC Seattle would be closing on the Hilton Seattle acquisition in the next two to three weeks, which would have placed the closing date sometime at the end of March 2021.   When UC Seattle investors, including Plaintiff, asked if walking away from the Hilton Seattle deal was an option for Urban Commons/UC Seattle, Wu stated that there was not because no financial contingency was in place, so, as a result, walking away from the Hilton Seattle deal would result in the Six Million Dollar ($6,000,000) down payment being lost. In addition, when UC Seattle investors, including Plaintiff, requested financial statements from UC Seattle, Wu represented that financial statements would only be provided when there was a payout and/or twice a year.

34.    As of the end of March 2021, Plaintiff had not received any notification that UC Seattle had closed the deal to acquire the Hilton Seattle.

35.    Subsequently, on April 14, 2021, Plaintiff received an email from a representative of UC Seattle that was addressed to all UC Seattle investors and which represented that (i) UC Seattle had "limited cash flow," (ii) UC Seattle temporarily would not be able to pay interest to UC Seattle investors, and (iii) UC Seattle would resume payments after July 1, 2021.

36.    On or about June 22, 2021, Plaintiff participated in a phone call with Wu, during which Plaintiff asked for her investment funds to be returned.   In response, Wu represented he would discuss with Defendant how much they could

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

give her back.  Neither Defendant nor Wu subsequently provided Plaintiff with any answer.

37.    On or after July 1, 2021, UC Seattle did not resume any investment payments to Plaintiff.

38.    On August 26, 2021, Plaintiff participated in another Zoom call with all UC Seattle investors that was led by Wu, Defendant's co-manager in Urban Commons, which is the manager of UC Seattle.  During the Zoom call, Wu represented that UC Seattle had not yet closed on the Hilton Seattle deal but would instead be waiting until September or October 2021.  During the Zoom call, Wu also represented that he was still discussing with Defendant whether UC Seattle would be receiving interest payments on their investments.  When the UC Seattle investors, including Plaintiff, pressed Wu as to why UC Seattle was not providing investors with more frequent updates, Wu said, "trust me we are all friends."  When the UC Seattle investors, including Plaintiff, asked why there was no financial contingency plan in place, Wu stated that it was not standard practice to have a financial contingency at "this level."  As the UC Seattle investors, including Plaintiff, continued to voice their questions and concerns to Wu, Wu cut the Zoom call short and left the UC Seattle investors, including Plaintiff, with a myriad of unanswered questions and growing concerns.

39.    Thereafter, on or about September 7, 2021, Plaintiff once again attempted to talk to Wu about receiving her investment funds back, but Wu told Plaintiff he was "too busy" to talk to Plaintiff.

40.    To date, neither Defendant nor Wu provided Plaintiff with any answer about receiving interest payments on her investment or a return of her investment funds.

41.    To date, Plaintiff has not received the investment sums she demanded back from UC Seattle.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

42.    Plaintiff is informed and believes and, on that basis, alleges that to date, UC Seattle has not acquired the Hilton Seattle.  Accordingly, Plaintiff is unaware of where her investment funds went or how they were used by Defendant, Wu, Urban Commons, and/or UC Seattle or even if they were used for their intended purpose, *i.e.*, acquiring the Hilton Seattle.

43.    The Subscription Agreement expressly provides that should the offering be terminated, the investment would be returned to Plaintiff with interest.  Defendant, either directly or through Urban Commons and/or UC Seattle, has refused to do so, (i) even though UC Seattle failed to timely complete the UC Seattle Offering and/or acquire the Hilton Seattle, and (ii) even though Plaintiff provided a written notice of termination of the Subscription Agreement and Investment Agreement and repeatedly requested that her investment funds be returned to her.

## **Defendant Woods is an Alter Ego of UC Seattle**

44.    Plaintiff is informed and believes and, on that basis, alleges that Defendant has so blatantly disregarded the corporate formalities between himself and UC Seattle that allowing him to seek protection from his fraudulent conduct by hiding behind UC Seattle would result in an injustice against this Court and Plaintiff.

45.    Plaintiff is informed and believes and, on that basis, alleges that Defendant disregarded corporate formalities by, among other things:

  a. Transferring at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) from UC Seattle to Urban Commons, which Defendant owns and co-manages, in 2020, despite a specific prohibition against such transfers contained in the UC Seattle Subscription Agreement, as alleged in Paragraph 11, above;

  b. Transferring at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite failing to remit Plaintiff's Preferred Return

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

1    Payments as alleged in ¶ 19 above and despite UC Seattle's failure to

2    acquire the Hilton Seattle as alleged in ¶ 13 above;

3       c.   Treating UC Seattle assets and funds as his own;

4       d.   Taking funds from UC Seattle and transferring them to other Urban

5    Commons-controlled entities under his ownership and control, in

6    addition to his own personal use.

7       46.   Plaintiff is informed and believes and, on that basis, alleges that

8    Defendant is one of two member-managers of Urban Commons, the limited liability

9    entity that was contractually appointed as the manager of the Property by the UC

10   Seattle Subscription Agreement.  Plaintiff is further informed and believes and, on

11   that basis, alleges that Defendant used his position as owner and member manager of

12   Urban Commons in order to fraudulently transfer funds between UC Seattle, Urban

13   Commons, and his personal accounts, as alleged above.

14      47.   Importantly, Woods has already been declared a "fraudster" by United

15   States Bankruptcy Court Judge Christopher S. Sontchi from the District of Delaware

16   in *In re EHT US1, Inc.*, 633 B.R. 223 (Bankr. D. Del., Nov. 15, 2021).

17      48.   In his opinion, Judge Sontchi stated:

18   "Messrs. Woods and Wu are fraudsters.  They fraudulently obtained a PPP

19   loan on behalf of the Debtor without authority and absconded with the

20   proceeds, leaving either the Debtor or the United States to pay back the lender.

21   They were sued by the Debtor, and, after notice and a hearing, the Court

22   entered summary judgment against them and their company and enjoined

23   Defendants from dissipating their assets.  In addition, the Court ordered a

24   detailed accounting.  Defendants have not provided a sufficient accounting and

25   have baldly stated they intend to dissipate their assets."

26   *In re EHT US1, Inc.*, 633 B.R. at 225.

27

28

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

## **FIRST CLAIM FOR RELIEF**

### **(Determination of Non-Dischargeability of Debt**

### **Pursuant to 11 U.S.C. §523(a)(2)(A))**

49.     Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 48 and realleges those allegations as if fully set forth herein.

50.     Defendant incurred obligations to Plaintiff by false pretenses, false representations, and/or actual fraud by misrepresenting essential material facts.

51.     In the Subscription Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that (i) UC Seattle would not use or apply the purchase price for Hilton Seattle until the necessary funds from the UC Seattle Offering had been raised; (ii) the funds raised for the UC Seattle Offering would be used to invest in UC Seattle, which would acquire, own, operate, and eventually sell the Hilton Seattle; (iii) the purchase price for the Hilton Seattle would be deposited into interest-bearing secure bank accounts; (iv) if the Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; and (v) UC Seattle would obtain a loan in an approximate aggregate amount of Seventy Million Dollars ($70,000,000) to acquire the Hilton Seattle.

52.     In the Investment Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that Plaintiff would receive a six percent (6%) guaranteed preferred return per annum on her investment (Preferred Return) to be paid each Calendar Quarter at a rate of 1.5% each Calendar Quarter.

53.     Defendant, through Howard Wu, his co-manager of Urban Commons, represented to UC Seattle investors, including Plaintiff, that the Hilton Seattle would be sold to EAGLEHT.

54.     At the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) instead of

keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Seattle and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in violation of the Subscription Agreement and their representations to Plaintiff; (ii) Defendant planned to transfer, and in fact did transfer, at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) in funds raised for the UC Seattle Offering from UC Seattle to Urban Commons, which Defendant owns and co-manages, in violation of the Subscription Agreement; (iii) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite failing to remit Plaintiff's Preferred Return Payments pursuant to the Investment Agreement and despite UC Seattle's failure to acquire the Hilton Seattle pursuant to the Subscription Agreement; (iv) as of at least 2019, EAGLEHT, the entity in which Defendant has ownership interest that was supposed to purchase the Hilton Seattle from UC Seattle, was not performing well; (v) EAGLEHT had defaulted on a Three Hundred and Forty-One Million Dollar (US$341,000,000) facility loan; (vi) EAGLEHT's facility loan default dated back to at least December 2019; (vii) Defendant and his associates were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 2013 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP; (viii) trading of EAGLEHT SP's units had been suspended; (ix) UC Seattle would not be able to make timely payments of Preferred Returns to Plaintiff pursuant to the Investment Agreement; (x) if the Hilton Seattle acquisition was not completed, UC Seattle would not be able to return investment funds to UC Seattle investors, including Plaintiff; and (xi) Defendant had no intention of returning Plaintiff's $300,000 investment in UC Seattle in the event the Subscription Agreement was terminated, and to date, even after receiving

-14-

Plaintiff's written notice of Termination of Membership Interest, Defendant has failed to return Plaintiff's $300,000 investment in UC Seattle.

55.    Defendant, either directly or indirectly through Wu, Urban Commons, and/or UC Seattle, made such misrepresentations and omissions to induce Plaintiff into investing in UC Seattle.

56.    In reliance on such misrepresentations and omissions, Plaintiff invested in $300,000 UC Seattle.

57.    Plaintiff was harmed by Defendant's concealment of such material facts. Had such material facts been disclosed, Plaintiff would have taken steps, including not investing in UC Seattle pursuant to the UC Seattle Offering.

58.    The intentionally fraudulent acts of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

59.    Based on the facts alleged herein, Plaintiff requests that Defendant's obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(2)(A), as the debts owed to Plaintiff were obtained by false pretense, false representation, and/or actual fraud.

## **SECOND CLAIM FOR RELIEF**

### **(Determination of Non-Dischargeability of Debt**

### **Pursuant to 11 U.S.C. §523(a)(2)(B))**

60.    Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 59 and realleges those allegations as if fully set forth herein.

61.    Defendant incurred obligations to Plaintiff by making materially false statements in the Subscription Agreement and Investment Agreement related to the financial condition of Defendant and/or insiders of Defendant, including Wu, Urban Commons, and/or UC Seattle.

62.     In the Subscription Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that (i) UC Seattle would not use or apply the purchase price for Hilton Seattle until the necessary funds from the UC Seattle Offering had been raised; (ii) the funds raised for the UC Seattle Offering would be used to invest in UC Seattle, which would acquire, own, operate, and eventually sell the Hilton Seattle; (iii) the purchase price for the Hilton Seattle would be deposited into interest-bearing secure bank accounts; (iv) if the Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; and (v) UC Seattle would obtain a loan in an approximate aggregate amount of Seventy Million Dollars ($70,000,000) to acquire the Hilton Seattle.

63.     In the Investment Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that Plaintiff would receive a six percent (6%) guaranteed preferred return per annum on her investment (Preferred Return) to be paid each Calendar Quarter at a rate of 1.5% each Calendar Quarter.

64.     At the time Defendant made these representations, Defendant knew that such representations were materially false, because Defendant was well aware that: (i) instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Seattle and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in violation of the Subscription Agreement and their representations to Plaintiff; (ii) Defendant planned to transfer, and in fact did transfer, at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) in funds raised for the UC Seattle Offering from UC Seattle to Urban Commons, which Defendant owns and co-manages, in violation of the Subscription Agreement; (iii) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-

manages, to Defendant's personally controlled accounts in 2020, despite failing to remit Plaintiff's Preferred Return Payments pursuant to the Investment Agreement and despite UC Seattle's failure to acquire the Hilton Seattle pursuant to the Subscription Agreement; (iv) as of at least 2019, EAGLEHT, the entity in which Defendant has ownership interest that was supposed to purchase the Hilton Seattle from UC Seattle, was not performing well; (v) EAGLEHT had defaulted on a Three Hundred and Forty-One Million Dollar (US$341,000,000) facility loan; (vi) EAGLEHT's facility loan default dated back to at least December 2019; (vii) Defendant and his associates were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 2013 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP; (viii) trading of EAGLEHT SP's units had been suspended; (ix) UC Seattle would not be able to make timely payments of Preferred Returns to Plaintiff pursuant to the Investment Agreement; (x) if the Hilton Seattle acquisition was not completed, UC Seattle would not be able to return investment funds to UC Seattle investors, including Plaintiff; and (xi) Defendant had no intention of returning Plaintiff's $300,000 investment in UC Seattle in the event the Subscription Agreement was terminated, and to date, even after receiving Plaintiff's written notice of Termination of Membership Interest, Defendant has failed to return Plaintiff's $300,000 investment in UC Seattle.

65.    Defendant, either directly or indirectly through Wu, Urban Commons, and/or UC Seattle, caused to be made or published such misrepresentations and omissions to intent to deceive Plaintiff and induce Plaintiff into investing in UC Seattle.

66.    In reasonable reliance on such misrepresentations and omissions, Plaintiff invested $300,000 in UC Seattle.

67.    Plaintiff was harmed by Defendant's concealment of such material facts. Had such material facts been disclosed, Plaintiff would have taken steps, including not investing in UC Seattle pursuant to the UC Seattle Offering.

68.    The intentionally fraudulent acts of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

69.    Based on the facts alleged herein, Plaintiff requests that Defendant's obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(2)(B), as the debts owed to Plaintiff were obtained by the use of a statement in writing that is materially false respecting the debtor's or an insider's financial condition.

### **THIRD CLAIM FOR RELIEF**

**(Determination of Non-Dischargeability of Debt**

**Pursuant to 11 U.S.C. § 523(a)(4))**

70.    Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 69 and realleges those allegations as if fully set forth herein.

71.    Pursuant to the Subscription Agreement, Plaintiff invested $300,000 in UC Seattle, which Defendant, through the Subscription Agreement, represented would be held in a secure interest-bearing escrow account until such time as UC Seattle used such funds to purchase Hilton Seattle.

72.    Defendant willfully, wrongfully, intentionally, and fraudulently took from the UC Seattle escrow account at least $300,000.00 while acting as an escrow holder and/or fiduciary, which investment funds belong to Plaintiff.  Such investment funds were taken from the UC Seattle escrow account without Plaintiff's consent and in violation of the Subscription Agreement.

73.    Defendant further committed embezzlement and larceny of such investment funds, for his own personal use and/or the use of third-party insiders of Defendant, Wu, Urban Commons and/or UC Seattle.

74.    The intentionally fraudulent acts of Defendant were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

75.    Based on the facts alleged herein, Plaintiff requests that Defendant's obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(2)(4), as the debts owed to Plaintiff were obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny.

## FOURTH CLAIM FOR RELIEF

### (Determination of Non-Dischargeability of Debt
### Pursuant to 11 U.S.C. § 523(a)(6))

76.    Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 75 and realleges those allegations as if fully set forth herein.

77.    Defendant, by making direct and indirect representations and omissions to Plaintiff in order to induce her to invest in UC Seattle, inflicted willful and malicious injury on Plaintiff.

78.    In the Subscription Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that (i) UC Seattle would not use or apply the purchase price for Hilton Seattle until the necessary funds from the UC Seattle Offering had been raised; (ii) the funds raised for the UC Seattle Offering would be used to invest in UC Seattle, which would acquire, own, operate, and eventually sell the Hilton Seattle; (iii) the purchase price for the Hilton Seattle would be deposited into interest-bearing secure bank accounts; (iv) if the Subscription Agreement was terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

of all costs and expenses; and (v) UC Seattle would obtain a loan in an approximate aggregate amount of Seventy Million Dollars ($70,000,000) to acquire the Hilton Seattle.

79.    In the Investment Agreement, Defendant, through Urban Commons, the Manager of UC Seattle, promised, among other things, that Plaintiff would receive a six percent (6%) guaranteed preferred return per annum on her investment (Preferred Return) to be paid each Calendar Quarter at a rate of 1.5% each Calendar Quarter.

80.    Defendant, through Howard Wu, his co-manager of Urban Commons, represented to UC Seattle investors, including Plaintiff, that the Hilton Seattle would be sold to EAGLEHT.

81.    At the time Defendant made these representations, Defendant knew that such representations were false, because Defendant was well aware that: (i) instead of keeping Plaintiff's investment in a secure, interest-bearing refundable escrow account, UC Seattle and Defendant opened and deposited Plaintiff's investment into a non-refundable escrow account in violation of the Subscription Agreement and their representations to Plaintiff; (ii) Defendant planned to transfer, and in fact did transfer, at least Five Million Seven Hundred and Seventy-Three Thousand Dollars ($5,773,000) in funds raised for the UC Seattle Offering from UC Seattle to Urban Commons, which Defendant owns and co-manages, in violation of the Subscription Agreement; (iii) Defendant planned to transfer, and in fact did transfer, at least Two Million Four Hundred Thousand Dollars ($2,400,000) of the aforementioned funds from Urban Commons, which Defendant owns and co-manages, to Defendant's personally controlled accounts in 2020, despite failing to remit Plaintiff's Preferred Return Payments pursuant to the Investment Agreement and despite UC Seattle's failure to acquire the Hilton Seattle pursuant to the Subscription Agreement; (iv) as of at least 2019, EAGLEHT, the entity in which Defendant has ownership interest that was supposed to purchase the Hilton Seattle from UC Seattle, was not performing well; (v) EAGLEHT had defaulted on a Three Hundred and Forty-One

Million Dollar (US$341,000,000) facility loan; (vi) EAGLEHT's facility loan default dated back to at least December 2019; (vii) Defendant and his associates were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Stock Exchange for suspected breaches of disclosure requirements under Section 2013 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EAGLEHT SP; (viii) trading of EAGLEHT SP's units had been suspended; (ix) UC Seattle would not be able to make timely payments of Preferred Returns to Plaintiff pursuant to the Investment Agreement; (x) if the Hilton Seattle acquisition was not completed, UC Seattle would not be able to return investment funds to UC Seattle investors, including Plaintiff; and (xi) Defendant had no intention of returning Plaintiff's $300,000 investment in UC Seattle in the event the Subscription Agreement was terminated, and to date, even after receiving Plaintiff's written notice of Termination of Membership Interest, Defendant has failed to return Plaintiff's $300,000 investment in UC Seattle.

82.    Defendant's conduct was wrongful, was without just cause or excuse, and necessarily caused injury to Plaintiff.

83.    Plaintiff was damaged as a result of Defendant's conduct.

84.    Defendant's actions were undertaken in a malicious manner justifying an award of punitive damages against Defendant and in favor of Plaintiff.

85.    Based upon the facts alleged herein, Plaintiff requests that Defendant's obligation to Plaintiff be found non-dischargeable in its entirety pursuant to 11 U.S.C. § 523(a)(6).

## **FIFTH CLAIM FOR RELIEF**

### **(Determination of Non-Dischargeability of Debt**
### **Pursuant to 11 U.S.C. § 523(a)(19))**

86.    Plaintiff hereby incorporates by reference each allegation contained in paragraphs 1 through 85 and realleges those allegations as if fully set forth herein.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

87.    Defendant's conduct detailed herein violates Federal securities laws and California securities laws.

88.    Defendant's conduct constitutes a violation of Rule 10b-5 and Section 12 of the Securities Act of 1933.

89.    Defendant's conduct constitutes a violation of California Corporations Code Sections 25110, 25200, 25401, 25403, 25503, 25504, and 25504.1.

90.    Defendant's conduct also constitutes common law fraud and deceit in connection with the purchase of a security.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Li Mei Chen prays for judgment against Defendant Taylor Ronald Woods, as follows:

**ON THE FIRST CLAIM FOR RELIEF:**

1.    For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

2.    For judgment against Defendant in a sum of at least $300,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

3.    For punitive damages.

**ON THE SECOND CLAIM FOR RELIEF:**

4.    For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B);

5.    For judgment against Defendant in a sum of at least $300,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

6.    For punitive damages.

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST TAYLOR RONALD WOODS

**ON THE THIRD CLAIM FOR RELIEF:**

7.  For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

8.  For judgment against Defendant in a sum of at least $300,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

9.  For punitive damages.


**ON THE FOURTH CLAIM FOR RELIEF:**

10. For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

11. For judgment against Defendant in a sum of at least $300,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

12. For punitive damages.


**ON THE FIFTH CLAIM FOR RELIEF:**

13. For judgment that the debts owed by Defendant to Plaintiff are non-dischargeable pursuant to 11 U.S.C. § 523(a)(19);

14. For judgment against Defendant in a sum of at least $300,000.00, plus pre-judgment interest and interest, as general and special damages to be proven at trial; and

15. For punitive damages.


**FOR ALL CAUSES OF ACTION:**

16. For reasonable attorney's fees and costs awardable under contract pursuant to Section 12 of the Urban Commons 6th Ave Seattle, LLC Membership Interest Subscription Agreement;

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS

17.  For costs of suit incurred herein;

18.  For reasonable attorney's fees incurred by Plaintiff, to the extent allowed by law; and

19.  For such other and further relief as the Court may deem just and proper.

## RESERVATION OF JURISDICTIONAL AND JURY TRIAL RIGHTS

Plaintiff Li Mei Chen reserves her rights to trial of the matter consistent with her Constitutional right to the jury trial of all non-bankruptcy claims and issues before the United States District Court, including without limitation, her claims for common law and securities fraud against Defendant.

## DEMAND FOR JURY TRIAL

Plaintiff Li Mei Chen hereby demands a trial by jury on all causes of action that are triable by jury.

DATED:  October 27, 2022

GARCIA RAINEY BLANK & BOWERBANK LLP

By _____*/s/ Norma V. Garcia*_____
NORMA V. GARCIA
JEFFREY M. BLANK
Attorneys for Plaintiff
LI MEI CHEN

ADVERSARY COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT AGAINST
TAYLOR RONALD WOODS