EXHIBIT 2

## URBAN COMMONS 6TH AVE SEATTLE, LLC
## MEMBERSHIP INTEREST SUBSCRIPTION AGREEMENT

TO:     Urban Commons 6th Ave Seattle, LLC

I hereby irrevocably offer to purchase a membership interest (the "Interest") in Urban Commons 6th Ave Seattle, LLC, a Delaware limited liability company (the "Company"), for a purchase price of $   _300,000 —_   , upon the terms and conditions described below. The membership interest shall be calculated using my capital contribution divided by the total capital contribution of $30,000,000, which shall result in an ownership percentage of   _1.00_ %.   I agree to pay the balance of the purchase price for the Interest to the Company not later than July 8, 2020. I will deliver to the Company the purchase price for the Interest in the manner set forth in Section 14 below.

I understand that up to 100% of the membership qualified purchasers may purchase interests in the Company in this offering. I further understand that the Company may terminate this offering at any time, that the Company, in its discretion, may accept or reject my subscription, provided that notification of such rejection must be given to me within 15 days after this Agreement, properly completed and signed by me, and full payment of the purchase price for the Interest is delivered to the Company, and that, if there is such rejection notification, the purchase price will be promptly returned to me without interest. The Company anticipates completing this offering by July 10, 2020.

I understand the Company will not use or apply the purchase price until the Company has raised the necessary funds from this offering. The funds raised from the offerings will be used to invest in an entity which shall acquire, own, operate, and eventually sell that certain property known as the Hilton Seattle, located at 1301 6th Avenue, Seattle, Washington (the "Property"). I further understand that (i) the purchase price will be deposited into an interest-bearing secure bank account and (ii) all interest earned on such account will be used by the Company to pay all cost and expenses (including, but not limited to, all legal, accounting and management costs and expenses) incurred in connection with this offering and the formation of the Company. The initial membership interests of the members will be reflected in the Operating Agreement for the Company. If this subscription is terminated, all funds raised by the Company will be returned to the applicable investors, together with any interest remaining on such funds following the payment of all costs and expenses.

I understand the Company is obtaining acquisition loans in an approximate aggregate amount of approximately $70,000,000 in order to acquire and refurbish the Property but that the terms for such financing have not yet been finalized.

I understand that the terms of the Interest and related agreements are set forth in the Operating Agreement for the Company, a copy of which has been or will be provided separately to me. The Company's acceptance of my subscription will be conditioned on my entering into the Operating Agreement and agreeing to be bound by all of its terms. I understand that the Operating Agreement for the Company will name Urban Commons, LLC as the sole manager of the Company (the "Manager") with exclusive authority and control over all Company decisions in entering into and managing real estate investments. The Operating Agreement will provide that each investor's capital will be returned at the time of a capital event(s) and prior to any profits from such capital event(s) being distributed to the members.

I understand that the purchase of the Interest involves certain risks, including, but not limited to, the risks identified on the **Schedule of Investment Risks** attached to this Agreement. I have carefully read and considered these risks before making this offer to purchase the Interest.

In connection with my subscription for and purchase of the Interest, I hereby represent and warrant to the Company and agree as follows:

1.     I am acquiring the Interest for my own account for investment and not with a view to or for sale in connection with any distribution of the Interest.

2.     In making this investment, I am relying upon my own investigation and analysis and have determined that the Interest is a suitable investment for me. The Company has made available to me information, and the opportunity to question its representatives, concerning the terms of this offering and the proposed investment of the Company in various real investments. I have been furnished with such information as I have requested. It has never been guaranteed or warranted by the Company, or any person connected with or acting on the Company's behalf, that I will be able to sell or liquidate the Interest in any specified period of time or that there will be any particular profit to be realized as a result of this investment. I have adequate means to provide for my current and expected financial needs and reasonable contingencies, can bear the economic risks (including a complete loss of the purchase price) associated with my purchase of the Interest and have no need for liquidity in this investment.

1

3.      The Company has advised me that the Interest is not being registered under the Securities Act of 1933, as amended (the "1933 Act"), in reliance upon the exemption from the registration requirements provided by Section 4(2), Rule 506 of Regulation D and/or Regulation S under the 1933 Act, and are not being qualified or registered under any state securities laws in reliance upon applicable exemptions from the qualification and registration requirements. I understand that no federal or state agency has made any finding or determination as to the fairness of this investment, nor any recommendation or endorsement of the Interest. I understand that the Company is relying in part on my representations set forth in this Agreement for purposes of claiming such exemptions. I understand the Company is under no obligation to register the Interest on my behalf.

4.      I agree that I, and any transferees of the Interest, shall be bound by the restrictions on transfers of the Interest which are described in this paragraph or are otherwise applicable under federal or state securities laws. I also understand that any certificate representing the Interest will bear a legend substantially in the following form, and any legend appropriate to comply with applicable state securities laws, which I agree to abide by:

"THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 NOR REGISTERED OR QUALIFIED UNDER ANY STATE SECURITIES LAWS, AND MAY NOT BE SOLD, TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS DULY QUALIFIED AND REGISTERED UNDER APPLICABLE STATE AND FEDERAL SECURITIES LAWS OR UNLESS, BASED ON AN OPINION OF COUNSEL OR OTHER EVIDENCE SATISFACTORY TO THE COMPANY, SUCH QUALIFICATION AND REGISTRATION ARE NOT REQUIRED."

I agree that stop transfer instructions prohibiting transfers of the Interest may be filed in the Company's records or issued to the Company's transfer agent as a means of preventing the sale or disposition of the Interest in violation of the restrictions and legends set forth in this paragraph above and that any transfer of the Interest or any portion thereof causing such a violation shall be void.

5.      The offer to sell the Interest was directly communicated to me by direct communication with the Company's director(s), officer(s) or manager(s), and I was not presented with or solicited by any leaflet, public promotional meeting, television advertisement or other form of general advertising.    (FILL IN THE FOLLOWING)    I am a citizen of _____U. S. A_____ or, if I am an entity, I was formed and exist under the laws of ____N.M._____.

6.      I have a substantial preexisting personal or business relationship with the Company's management personnel and/or, by reason of my business or financial experience, or the business or financial experience of my management if I am an entity, am capable of evaluating the merits and risks of my purchase of the Interest and have the capacity to protect my interests in connection with this investment.

7.      I am an "Accredited Investor," as defined in Rule 501(a) of Regulation D under the 1933 Act, as follows (CHECK EACH APPLICABLE BOX--AT LEAST ONE MUST BE APPLICABLE AND CHECKED):

[ ]    (a)    I am a natural person whose individual net worth, or joint net worth with my spouse, including the estimated net fair market value of my principal residence, presently exceeds $1,000,000; and/or

[ ]    (b)    I am a natural person who had individual income, without that of my spouse, in excess of $200,000 in each of the two most recent years and reasonably expects to have income in excess of $200,000 in the current year; and/or

[ ]    (c)    I am a natural person who had joint income with my spouse in excess of $300,000 in each of the two most recent years and reasonably expects to have such joint income in excess of $300,000 in the current year; and/or

[ ]    (d)    I am (circle which one) a corporation, partnership, limited liability company, or organization described in Section 501(c)(3) of the Internal Revenue Code, not formed for the specific purpose of acquiring the Interest, with total assets in excess of $5,000,000; and/or

[ ]    (e)    I am a trust, not formed for the specific purpose of acquiring the Interest, with total assets in excess of $5,000,000 whose purchase is directed by a sophisticated person (i.e., a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of this prospective investment); and/or

[ ]    (f)    I am any of the following (CIRCLE WHICH ONE):  a bank (as defined in Section 3(a)(2) of the 1933 Act), or a savings and loan association or other institution (as defined in Section 3(a)(5) of the 1933 Act), whether acting in an individual or fiduciary capacity; or a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; or an insurance company (as defined in Section 2(13) of the 1933 Act; or an investment company registered under the Investment Company Act of 1940; or a business development company (as defined in Section 2(a)(48) of the Investment Company Act of 1940; or a Small Business Investment Company licensed by the U.S. Small Business

Administration under Section 301(c) or (d) of the Small Business Administration Act of 1958; or a plan established and maintained by a state, its political subdivisions or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, if such plan has total assets in excess of $5,000,000; or an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary (as defined in Section 3(21) of such Act), which is either a bank, savings and loan association, insurance company or registered investment adviser or, if a self-directed plan, with investment decisions made solely by persons who are accredited investors; and/or

[ ]     (g)     I am an entity in which all of the equity owners are Accredited Investors.

8.     (CHECK THIS BOX IF APPLICABLE:     [ ]) The offer to sell the Interest was not made to me by the Company or its agents while I was in, and I have made this offer to buy the Interest and signed this Agreement when I have been outside of, the United States of America (which for purposes of this Agreement includes all of its states, territories and possessions and the District of Columbia).

9.     The information set forth in this Agreement is correct with respect to me as of the date of my execution of this Agreement. I will promptly notify the Company of any change in such information occurring before I am notified of the acceptance of my subscription by the Company and will provide any further supplementary information, which is requested by the Company.

10.     I hereby agree to indemnify the Company and its officers, directors, managers and agents against, and hold such parties harmless from, any and all liabilities, damages, costs or expenses, including, without limitation, those arising under federal or state securities laws, incurred on account of or arising out of: (a) any inaccuracy in my representations and covenants set forth herein; or (b) the disposition of any of portion of the Interest which I will receive, contrary to my foregoing representations and covenants.

11.     If a corporation, partnership, trust, limited liability company or other form of business entity, I am authorized and otherwise duly qualified to purchase and hold the Interest and have not been formed for the specific purpose of making an investment in the Company. If an undersigned individual is executing this Agreement, as well as all other related documents, on behalf of any entity, such individual represents that he or she is duly authorized to execute all such documents on behalf of that entity. If an individual, I am under no legal disability with respect to entering into this Agreement or purchasing the Interest.

12.     At the Company's request, I will promptly execute such other instruments or documents as may be reasonably required in connection with my purchase of the Interest. Whenever the context hereof so requires, use of either the masculine, feminine or neuter shall include the masculine, feminine and neuter, and use of the singular or the plural form shall include the singular and plural. This Agreement shall be governed by and construed in accordance with the laws of the State of California, excluding conflict of laws provisions. In any dispute or legal proceeding relating to the enforcement of rights under this Agreement, the prevailing party shall be entitled to recover its reasonable legal fees and costs. This Agreement constitutes the entire agreement between me and the Company, and supersedes any prior or contemporaneous representations, warranties, understandings or agreements, with respect to the subject matter of this Agreement. Neither this Agreement nor any provision hereof may be amended, waived or canceled except by an instrument in writing signed by the party against whom any such amendment, waiver or cancellation is sought. Any provision of this Agreement which is invalid or unenforceable under applicable laws shall be deemed inoperative to the extent it conflicts with such laws, but shall not affect the enforceability of other provisions of this Agreement. No waiver of any of the provisions of this Agreement shall be deemed a waiver of any other provision, whether or not similar, nor will any waiver constitute a continuing waiver.

13.     This Agreement shall be binding upon my heirs, executors, administrators, successors and assigns. However, my rights and obligations to purchase the Interest under this Agreement may not be assigned or transferred to any other person without the Company's prior written consent and any assignment or transfer in violation of this paragraph shall be void.

14.     The purchase price for the Interest will be paid in the form of a (wire, check, transfer, etc):     _wire_     .

DATED:  7-3-2020

Printed Name of Purchaser

Chen's Family LLC

Signature of Purchaser

Li mei Chen

Printed Name(s) and Title(s) or
Capacity(ies) of any Officer(s)
Partner(s) or Agent(s) Acting on
Behalf of Purchaser (if an entity):

Name: _____ Li Mei Chen

Title: _____ Mangge

Signature(s) of Any Officer(s),
Partner(s) or Agent(s) Acting
on Behalf of Purchaser if an entity:

Signature: _____ Li mei Che

4

## ADDITIONAL INFORMATION

[COMPLETE EACH ITEM. MODIFY AS APPROPRIATE IF THERE ARE TWO OR MORE PURCHASERS. ADD ADDITIONAL SHEETS IF NECESSARY TO COMPLETE ANY OF THE ITEMS.]

1.    Give the exact name(s) in which title to the Interest is to be taken:

*Chen's Family, LLC*

Indicate the type of ownership [check one]:

[ ]    Individual ownership              [ ]    Joint Tenancy
       (One signature required)                 (Both parties must sign)

[ ]    Trust (Include                    [ ]    Community Property
       name of trustee(s) and date             (Spouse or spouses named
       trust was established)                   as record holder(s)
                                                must sign)

[ ]    Partnership (Include              [ ]    Tenants in Common
       copy of the statement                    (Both parties must sign)
       of partnership or the
       partnership agreement
       or certificate authorizing
       signature)

[ ]    Corporation (Include              [ ]    Other:_____
       certified corporate
       resolution authorizing
       purchase and signature)

2.    If the purchaser is other than an individual purchasing for his or her own account (a corporation, trustee, partnership, custodian, estate, etc.), indicate the nature of the purchaser and the capacity of any person(s) signing above on behalf of the purchaser:

_____

_____

3.    Residence address of purchaser or principal business address (if an entity):

_____████████████████████████████████████████████████████████_____

4.    Mailing address (if different than residence address) to be used for notices from the Company:

_____████████████████████████████████████████████████████████_____

5.    Telephone numbers:

      Business:     ████████████████████████

      Residence:    (___) _____

      Facsimile:    (___) _____

6.    Tax ID Number (Social Security Number if an individual): ████████████████

7.    E-Mail Address: ███████████████████████████████████████

## ACCEPTANCE BY THE COMPANY

URBAN COMMONS 6TH AVE SEATTLE, LLC hereby accepts the foregoing agreement and agrees to be bound by its provisions.

DATED: _____

URBAN COMMONS 6TH AVE SEATTLE, LLC,
a California limited liability company

By:    Urban Commons, LLC,
      a Delaware limited liability company,
      Its Manager

      By:_____
              Signature

      _____
      Printed Name

      _____
      Title

6

## EXHIBIT "A"

## INITIAL MEMBERS, POSITION AND PERCENTAGE INTERESTS

| NAME | CAPITAL PERCENTAGE INTEREST |
|---|---|
| Chen's Family LLC | 1. % |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total** | **100.000%** |

EXHIBIT A

**MEMBERS:**

Printed Name of Member

Signature of Member

*Chen's Family LLC*

*Li Mei Chen*

Printed Name(s) and Title(s) or
Capacity(ies) of any Officer(s)
Partner(s) or Agent(s) Acting on
Behalf of Member

Signature(s) of Any Officer(s),
Partner(s) or Agent(s) Acting
on Behalf of Member

By: *Li Mei Chen*

By: *Li Mei Chen*

Title: *Manager*

*7/5/2020*